**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| MICHAEL LANE MCHONE, JR., Petitioner, | ) | |
| v. | ) | 1:08CV775 |
| THEODIS BECK, Respondent. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was originally tried and convicted for first-degree murder and armed robbery in March of 2004 in the Superior Court of Cabarrus County. The murder conviction was reversed on appeal based on an error with jury instructions, but the armed robbery conviction was upheld. State v. McHone, 174 N.C. App. 289, 620 S.E.2d 903 (2005). Petitioner was then retried in a non-capital trial on the murder charge alone. Petitioner was again convicted on the murder charge and sentenced to life imprisonment in case 00 CRS 19019.

Petitioner did file a direct appeal with the North Carolina Court of Appeals. That court upheld his murder conviction in an unpublished decision. State v. McHone, No. COA07-782, 2008 WL 707220 (N.C. Ct. App. March 18, 2008). Petitioner sought no further review of any type in the state courts, but instead filed his habeas petition in this Court. Respondent has now moved for summary judgment in the matter.

## **Facts**

The basic facts of the case, as set out by the North Carolina Court of Appeals in its unpublished opinion, are as follows:

> On the morning of 14 November 2000, Tammy Cush [“the victim”] was discovered dead in her apartment. Her husband returned home and found his wife's naked body lying in their bedroom. She had two stab wounds to the neck which, according to expert testimony, caused her death. A jar of coins was spilled on the living room floor. Silver coins from this jar were missing, as were the Play Station and VCR. Mrs. Cush's purse had been emptied of the money inside, and food was strewn on the kitchen floor. A trail of vegetables led towards defendant's apartment. The victim's VCR and Play Station were found in defendant's apartment.
>
> In response to police questioning the next day, defendant admitted having entered the victim's home on the evening of 13 November 2000. He stated he had seen Mrs. Cush lying naked in the bedroom with a hole in her neck trying to breathe. Defendant contended that he slipped in a pool of warm blood, vomited in the toilet, took the VCR and Play Station, and returned to his apartment.

Id. at *1.

## **Claims in the Petition**

Petitioner raises four possible claims for relief in his petition. He alleges that: (1) his right to be free from double jeopardy was violated because the State tried him on a felony murder theory using the robbery conviction which was still in place from his first trial, (2) the trial court erred in admitting several types of evidence addressing Petitioner’s prior bad acts or statements, (3) the use of a “short-form” indictment in his case was not proper, and (4) the trial court erred by not giving a jury instruction for second-degree murder.

**Standards of Review**

If the Court finds that Petitioner's claims were adjudicated by the state courts on their merits, it must then apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to petitioner's claims. That statute states that habeas relief cannot be granted in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. "Unreasonable" is not the same as "incorrect" or "erroneous" and the reasonableness of the state court's decision must be judged from an objective, rather than subjective, standpoint. Id. at 409-411. A holding is not reasonable simply because precedent written by one of the Nation's jurists agrees with it. Id. at 410. As for questions of fact, state court findings of fact are presumed

correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, Petitioner's first, second, and fourth claims were presented to the North Carolina Court of Appeals following Petitioner's second trial and rejected on their merits. The deferential standards just set out will be applied to those claims as appropriate.

## Discussion

### Claim One

Petitioner's first claim is that his trial on a theory of felony murder constituted double jeopardy because it relied upon his previous conviction for the armed robbery stemming from the same set of facts. Respondent's first response to this claim is that it is nonexhausted and procedurally barred from federal review because Petitioner failed to present the claim to the North Carolina Supreme Court for discretionary review.

Respondent's argument is well taken. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). However, Petitioner has also presented evidence in his reply brief that his appellate counsel essentially advised him against presenting his claims to the North Carolina Supreme Court. It appears that she did not warn him that failing to file for discretionary review might later bar his claims from federal habeas review. Rather than deal with any possible complications that this set of facts could create in a procedural bar analysis, the Court will instead address Petitioner's first claim on its merits.

As already stated, Petitioner’s double jeopardy claim was raised on direct appeal and decided by the North Carolina Court of Appeals. That court stated that:

> The verdict sheet from the second trial in the record reflects that the jury answered yes to both of the following options: “The defendant is guilty of 1st degree murder with malice, premeditation and deliberation”; “[t]he defendant is guilty of 1st degree murder under the Felony Murder Rule with the underlying felony of Robbery with a Dangerous or Deadly Weapon.” . . .
>
> “As we have held on numerous occasions, ‘where defendant is convicted of first-degree murder based upon both premeditation and deliberation and felony murder, the underlying felony does not merge with the murder conviction and the trial court is free to impose a sentence thereon.’ “ State v. Robinson, 342 N.C. 74, 82-83, 463 S.E.2d 218, 223 (1995) (citation omitted), cert. denied, 517 U.S. 1197, 134 L.Ed.2d 793 (1996). There is no logical or legal reason to distinguish this case because the underlying felony conviction took place in a previous version of the same trial. The underlying felony conviction did not occur in an unrelated trial; it was obtained when defendant was on trial for the same charges he faced in the later trial. Our reversal of the original murder conviction on the basis of improper jury instructions does not cut off the State's right to incorporate that charge in its theory of the case. In addition, since defendant was convicted of first degree murder by premeditation and deliberation, defendant's conviction for felony murder is irrelevant.

State v. McHone, No. COA07-782, 2008 WL 707220, at *1-2.

Although couched in terms of state law, the North Carolina Court of Appeals’ ruling does not contravene federal law. Lockhart v. Nelson, 488 U.S. 33, 40-42 (1988)(reversal of conviction on appeal does not generally prevent retrial unless reversal is for insufficiency of evidence or will exclude evidence and create insufficiency); United States v. Ellyson, 326 F.3d 522, 532 (4th Cir. 2003)(reversal of a conviction on appeal does not give rise to a double jeopardy claim at retrial). Further, as the state court

pointed out, there is a very practical problem with Petitioner's claim. He was convicted based on two entirely separate theories of first-degree murder. Even if use of the robbery conviction had been a double jeopardy violation which invalidated his conviction for felony murder, Petitioner's conviction would still be valid based on the entirely separate premeditation and deliberation theory. The felony murder theory was irrelevant. Because the North Carolina Court of Appeals' ruling did not contravene or misapply any established Supreme Court precedent, Petitioner is entitled to no relief on his double jeopardy claim. That claim should be denied.

**Claim Two**

Petitioner's second claim for relief challenges the admission of several types of testimony at his trial as being improper. He claims that the trial court erred in admitting evidence that (1) one month before the murder, Petitioner killed his iguana with a knife, gutted it, cut off its head, and put its tail in its mouth, (2) Petitioner collected knives, (3) Petitioner knew how to disable electricity and telephone lines, (4) Petitioner was controlling and demanding in prior relationships, and (5) the victim's husband believed that Petitioner had followed the victim in a car.

Respondent again challenges this claim on the grounds of procedural default. However, this challenge is made on a slightly different basis from the procedural default argument raised as to the first claim for relief. Here, Respondent correctly notes that Petitioner raised this claim in state court on direct appeal, but

raised it only under state law, as opposed to presenting it in federal constitutional terms. (Docket No. 6 Ex. 3 at 13-16.) The North Carolina Court of Appeals then disposed of it on state law grounds. McHone, 2008 WL 707220, at *3-5. Unfortunately for Petitioner, he is required to have raised and exhausted his claim on federal law grounds before presenting it in this Court. A claim raised only under state law is nonexhausted and this Court cannot grant relief on nonexhausted claims. See Duncan v. Henry, 513 U.S. 364, 366 (1995)(raising an evidentiary claim as a violation of state law not sufficient to exhaust federal claim for habeas review). Petitioner's claim is clearly not exhausted.

If Petitioner were now to return to the state courts to exhaust his evidentiary claim by having it reviewed on federal terms, he would face mandatory imposition of a procedural bar under N.C. Gen. Stat. § 15A-1419(a)(1), (a)(3), and (b)(a claim shall be denied if a petitioner was in a position to raise the claim on appeal or in a prior motion for appropriate relief, but failed to do so, absent cause and prejudice or a fundamental miscarriage of justice). Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001)(noting that § 15A-1419 procedural bars had become mandatory). Where, as here, a habeas petitioner would find his nonexhausted claim subject to a mandatory procedural bar if he returned to state court for exhaustion, it is also barred from federal habeas review. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998).

A petitioner may overcome procedural default by showing cause for the default and actual prejudice resulting from the asserted

constitutional error. Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Mickens v. Taylor, 240 F.3d 348, 356 (4th Cir. 2001). To demonstrate "cause," a petitioner may make "'a showing that the factual or legal basis for the claim was not reasonably available to counsel.'" McCarver v. Lee, 221 F.3d 583, 591 (4th Cir. 2000) (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)). To establish "prejudice," a petitioner must show "'not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Id. at 592 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

Here, Petitioner has shown no cause. The factual and legal basis for his claim was obviously present and available to counsel on direct appeal. In fact, the claim was raised, but not under federal law. Petitioner's claim on direct appeal asserted only that the trial court misapplied state evidentiary rules, not that the misapplication violated Petitioner's federal constitutional rights. Petitioner shows no cause for this.

Petitioner could, at least theoretically, have his claim reviewed through a showing that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750; see also McCarver, 221 F.3d at 588. This exception applies only "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke v. Haley, 541 U.S. 386, 392-94 (2004) (citing

Murray v. Carrier, 477 U.S. 478, 496 (1986)). Moreover, the "actual innocence" exception has been limited by the Fourth Circuit Court of Appeals to apply only in capital cases or cases where the alleged error results in the application of recidivist enhancements. United States v. Mikalajunas, 186 F.3d 490, 494-95 (4th Cir. 1999).[1] In order to demonstrate actual innocence, a petitioner must show "'by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found'" him guilty. Dretke, 541 U.S. at 393 (quoting Sawyer v. Whitley, 505 U.S. 333, 336 (1992)).

Obviously, Petitioner cannot meet this burden. The facts as set out in the North Carolina Court of Appeals' opinion denying Petitioner's direct appeal would allow a reasonable juror to have convicted him. Even if the actual innocence exception is available in Petitioner's case, he cannot clear the high hurdle of demonstrating actual innocence. His second claim for relief is procedurally barred and should be denied for that reason.

**Claim Three**

Petitioner's third claim for relief alleges that his rights were violated by the use of a "short form" murder indictment in his case. He contends that the indictment did not allege all of the necessary elements of murder.

Petitioner's third claim was not presented to the state courts at any point. Therefore, it is nonexhausted and procedurally

[1]There is some doubt about the extension of the actual innocence exception beyond capital cases. Dretke v. Haley, 541 U.S. 386, 392-94 (2004).

barred for the same reasons as his second claim. Further, it fails on its merits in any event. As Respondent points out, “short form” claims from North Carolina have been presented to, and rejected by, the Fourth Circuit on a number of occasions. See, e.g., Stroud v. Polk, 466 F.3d 291, 295 (4th Cir. 2006), cert. denied, ___ U.S. ___, 127 S.Ct. 2978 (2007). Such indictments do not violate a defendant’s federal constitutional rights. Id. Petitioner’s third claim for relief should be denied because it is procedurally defaulted and because it has no merit.

**Claim Four**

Petitioner’s fourth, and final, claim for relief asserts that the trial court erred by not instructing the jury on the lesser-included offense of second-degree murder. The United States Supreme Court has dealt with instructions on lesser included offenses primarily in capital cases. See, e.g., Beck v. Alabama, 447 U.S. 625 (1980). There, the Supreme Court noted that it has "never held that a defendant is entitled to a lesser included offense instruction as a matter of due process." Id. at 637. The Court said that "if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, [a state] is constitutionally prohibited from withdrawing that option from the jury in a capital case." Id. at 638 (emphasis added). Under the reasoning in Beck, therefore, Petitioner was not entitled to a lesser included offense instruction as a matter of constitutional law in his non-capital case. His claim appears barred from federal habeas review. See Trujillo v. Sullivan, 815

F.2d 597, 602 (10th Cir. 1987)(adopting this position and noting that it is also the position of the Sixth, Eighth, and Ninth Circuits).

At most, the question of whether or not a lesser-included offense instruction was required would be a matter of state law, which can violate federal law only if the state court's interpretation of its own law also violated the United States Constitution. See Valles v. Lynaugh, 835 F.2d 126, 128 (5th Cir. 1988). Because federal habeas relief is generally not available for errors of state law, the circumstances that would allow a federal habeas court to overturn the state court determination would need to be extraordinary. Bates v. Lee, 308 F.3d 411, 417 (4th Cir. 2002). A federal habeas court only looks at whether the state courts' finding that there was insufficient evidence to support a requested instruction "was so wrong as to amount to a miscarriage of justice." Id.

The North Carolina Court of Appeals' decision in the present case does not amount to a miscarriage of justice. As it states, if a defendant is tried for first-degree murder under North Carolina law, a second-degree murder instruction is proper only if the defendant presents some evidence negating the element of premeditation and deliberation. The Court of Appeals pointed to Petitioner's conduct of robbing the victim after the killing and the nature and number of wounds on the victim as evidence of premeditation and deliberation. McHone, 2008 WL 707220, at *2-3. It concluded that no second-degree murder instruction was required.

Petitioner states that this decision was incorrect because part of the State's own evidence stated that he "blacked out" after drinking heavily and then came to and found the victim dead. Petitioner does not point to where in the 1200 pages of transcripts from his trial evidence that he blacked out from drinking was presented. However, this does not matter, because the fact that Petitioner may have experienced an alcoholic blackout which caused him not to remember the murder does not mean that the murder was not premeditated or deliberate. As the Fourth Circuit has noted, mere intoxication does not entitle a defendant to a second-degree murder instruction under North Carolina law. Instead, a defendant must produce substantial evidence that he was so intoxicated that his mind and reason were "'so completely overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill.'" Skipper v. Lee, No. 00-8, 2000 WL 1853330, * 5 (4th Cir. December 19, 2000)(quoting State v. Strickland, 321 N.C. 31, 361 S.E.2d 882, 888 (1987)). A simple, unexplained reference to the fact that Petitioner claimed to have "blacked out" does not meet this standard or negate the circumstantial evidence discussed by the North Carolina Court of Appeals which supported a finding of premeditation and deliberation. No miscarriage of justice occurred because Petitioner was not entitled to a lesser-included instruction under North Carolina law. Further, the state court's decision was not contrary to or an unreasonable application of any Supreme Court precedent. Petitioner's fourth claim for relief should be denied.

**IT IS THEREFORE RECOMMENDED** that Respondent's motion for summary judgment (Docket No. 5) be granted, that the petition (Docket No. 2) be denied, and that Judgment be entered dismissing this action.

/s/ Donald P. Dietrich
**Donald P. Dietrich**
**United States Magistrate Judge**

March 26, 2009